UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| KIMBERLY D. CROSSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VERMONT DEPT CHILDREN AND FAMILY SERVICES | ) | Case No. 5:19-cv-197 |
| | ) | |
| v. | ) | |
| | ) | |
| VERMONT DEPARTMENT OF HUMAN SERVICES | ) | Case No. 5:19-cv-198 |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION | ) | Case No. 5:19-cv-199 |
| | ) | |
| v. | ) | |
| | ) | |
| BRATTLEBORO REFORMER, SUSAN SMALLHEER | ) | Case No. 5:19-cv-200 |
| | ) | |
| v. | ) | |
| | ) | |
| VERMONT JUDICIARY AND STAFF | ) | Case No. 5:19-cv-201 |
| | ) | |
| v. | ) | |
| | ) | |
| FACT TV8 | ) | Case No. 5:19-cv-202 |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF BARNET, LISA BOWDEN | ) | Case No. 5:19-cv-203 |
| | ) | |
| v. | ) | |
| | ) | |
| GOVERNOR OF VERMONT | ) | Case No. 5:19-cv-224 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| BELLOWS FALLS, TOWN OF | ) | Case No. 5:19-cv-225 |
| ROCKINGHAM, WENDY HARRISON, | ) | |
| DAVID BEMIS | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF VERMONT, | ) | Case No. 5:19-cv-226 |
| | ) | |
| Defendants. | ) | |
| | ) | |

### OPINION AND ORDER
### GRANTING APPLICATIONS FOR LEAVE TO
### PROCEED *IN FORMA PAUPERIS* AND DISMISSING COMPLAINTS

In November 2019, Plaintiff Kimberly D. Crosson, representing herself, filed ten

applications to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915, seeking to bring

actions against various defendants as discussed below. Because Ms. Crosson submitted

affidavits that make the required showing under 28 U.S.C. § 1915(a), her requests to proceed

*in forma pauperis* are GRANTED. However, for the reasons discussed below, the proposed

Complaints are DISMISSED.

## I.    Standard of Review

Under the IFP statute, the court conducts an initial screening of the complaint. *See*

28 U.S.C. § 1915(e)(2). The court is required to read a self-represented plaintiff's complaint

liberally and to construe it to raise the strongest arguments it suggests. *Harris v. Miller*,

818 F.3d 49, 56 (2d Cir. 2016) (per curiam). However, the court must dismiss a complaint if it

determines that the action is "frivolous or malicious," fails to state a claim on which relief can be

granted, or seeks monetary relief "against a defendant who is immune from such relief." *See*

28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint states a claim, the court must "accept as true all of

the allegations contained in a complaint" and decide whether the complaint states a claim for

relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks omitted). All complaints must contain "sufficient factual matter[] . . . to state a

claim" for relief. *Id.* While "lenity" is required, self-represented litigants nevertheless must

satisfy the plausibility standard set forth in *Iqbal*. *Harris v. Mills*, 572 F.3d 66, 68, 72 (2d Cir.

2009). "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Further, federal courts "have an independent obligation to consider the presence or

absence of subject matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.

2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action."). The existence of subject matter jurisdiction is a

threshold issue because "without jurisdiction, the district court lacks the power to adjudicate the

merits of the case." *Carter v. HealthPort Techs, LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016). "[T]he

party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster,

Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

## II. Discussion

### A. *Crosson v. Vermont Dept Children and Family Services* (Case No. 5:19-cv-197)[1]

Plaintiff has submitted a proposed Complaint alleging the "Vermont Dept Children and

Family Services" ("DCF") conspired with others regarding a false allegation of abandonment,

culminating in the wrongful termination of her parental rights in 2007. She asserts her

constitutional, disability, and religious rights were violated and cites 42 U.S.C. § 1983. She

seeks: "13 Billion American Cash Dollars plus maximum award amount for punitive damages,

---

[1] Citations to documents within each case section refer to documents filed in that case
unless otherwise noted.

all medical physical, mental, emotional anguish and distress, all previous expenses of travel and trauma, current expenses, future expenses and damages to fullest extent, all rights [be] reinstated and a public apology."  (Doc. 1-2 at 1.)

Congress enacted 42 U.S.C. § 1983 to provide a statutory remedy for violations of the Constitution.  Congress "specified the conduct at issue must have occurred 'under color of' state law; thus, liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity."  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks omitted).  Under § 1983, a claimant may bring suit against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, [any] person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

The statute is "not itself a source of substantive rights" but rather provides "a method for vindicating federal rights elsewhere conferred."  *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted).  To prevail on a claim under § 1983, a plaintiff "must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment bars private suits for retrospective relief against a state in federal court, absent consent to suit by the state or valid congressional abrogation of this immunity.  *See Alden v. Maine*, 527 U.S. 706,

754 (1999) (citation and internal quotation marks omitted) ("Our sovereign immunity precedents establish that suits against nonconsenting States are not properly susceptible of litigation in courts, and, as a result, that [t]he entire judicial power granted by the Constitution does not embrace authority to entertain such suits in the absence of the State's consent[.]"); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 193 (2d Cir. 2015).

In enacting § 1983, Congress did not abrogate the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States"). Vermont has preserved its sovereign immunity and has not consented to this lawsuit. *See* 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the State under the Eleventh Amendment of the U.S. Constitution."). Accordingly, Plaintiff cannot assert claims against the state, its agencies, or any of its officials in their official capacities in federal court. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Vermont DCF is a state agency and therefore Plaintiff's claims for damages and other relief against it are barred. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986) (state and state agency immunity from suits in federal courts "exists whether the relief sought is legal or equitable"); *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (noting a court may raise sua sponte state sovereign immunity as a bar to federal subject matter jurisdiction).

Dismissal is also warranted because Plaintiff does not allege the essential elements of a claim and thus "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's vague and conclusory factual allegations are

not sufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678 (stating all complaints must contain "sufficient factual matter[] . . . to state a claim" for relief) (internal quotation marks omitted).

Finally, dismissal is warranted because Plaintiff's action is untimely.  Section 1983 actions that are filed in Vermont, as here, are subject to Vermont's three-year statute of limitations for personal injury actions.  *See* 12 V.S.A. § 512(4); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but . . . the statute of limitations . . . is that which the State provides for personal-injury torts.").  The accrual date of a § 1983 cause of action, however, is a "question of federal law that is *not* resolved by reference to state law."  *Wallace*, 549 U.S. at 388; *see also Spak v. Phillips*, 857 F.3d 458, 462–63 (2d Cir. 2017).  Under federal law, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted).  Stated differently, the claim accrues and the statute of limitations begins to run "when the wrongful act or omission results in damages[,] . . . even though the full extent of the injury is not then known or predictable."  *Id*. at 391 (internal quotation marks omitted); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (explaining that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action") (internal quotation marks omitted).  Here, Plaintiff knew of her injury in 2007, at the time her parental rights were terminated, when she alleges her due process rights were violated.  *See Holiday v. Martinez*, No. 02–7848, 2003 WL 21242641, at *2 (2d Cir. May 29, 2003) (three-year statute of limitations applies to § 1983 due process claim, which accrues when plaintiff knows or has reason to know of the injury which is the basis of his action).

Because Plaintiff has not and cannot plausibly allege a claim for relief against Vermont DCF, a Vermont agency immune from this federal suit, stemming from the termination of her parental rights in 2007, Plaintiff's proposed Complaint against DCF (Doc. 1-2) must be DISMISSED.

**B.**   ***Crosson v. Vermont Department of Human Services*** **(Case No. 5:19-cv-198)**

Plaintiff has submitted a proposed Complaint alleging the Vermont Department of Human Services ("DHS") has continuously harassed her by denying benefits, imposing sanctions, and refusing emergency assistance.  She asserts her due process, disability, civil, and human rights have been violated.  She seeks: "5 Billion American Cash Dollars . . . all legal fees, court fees, . . . compensation for all financial burden, violations of rights, punitive damages, emotional, mental, and physical distress and anguish."  (Doc. 1-2 at 2.)  She further requests the court appoint counsel to represent her "to insure fairness in all hearings and for the chance for justice that [she] seeks."  (*Id.* at 5.)

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011).  Nevertheless, a party granted IFP status may move the court for the appointment of an attorney if unable to afford one.  *See* 28 U.S.C. § 1915(e)(1).  A court may ask an attorney to represent an indigent litigant under § 1915(e)(1), but there are no court funds available to pay an attorney.  *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007).  "As a result, [these] appointments occur very rarely, being saved for cases that appear to have some chance of success."  *Id.* (footnote omitted).  A district court has "[b]road discretion" in making this decision.  *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

The Second Circuit has laid out a framework for determining whether counsel should be appointed for IFP litigants in civil cases. *Id*. at 61. As a threshold requirement, a court must determine whether the indigent's claim "is likely one of substance." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Hodge*, 802 F.2d at 61). Once satisfied, the court

> should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62. A court may also consider if the indigent party has made an effort to retain counsel and the general availability of counsel able to provide representation on a pro bono basis. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *see also Hodge*, 802 F.2d at 61.

Here, in light of the IFP designation, there is little question Plaintiff is unable to afford counsel on her own. However, although she alleges violations of fundamental rights, Plaintiff is unlikely to prevail in federal court, as discussed below. Therefore, Plaintiff's request for appointment of counsel (Doc. is DENIED.

Vermont DHS is a state agency and therefore Plaintiff's claims for damages and other relief against it are barred under the Eleventh Amendment. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (recognizing the Eleventh Amendment bars suits in federal court against both state and state agencies). Therefore, Plaintiff's proposed Complaint against Vermont DHS (Doc. 1-2) must be DISMISSED.

C.     *Crosson v. Social Security Administration* **(Case No. 5:19-cv-199)**

Plaintiff has submitted a proposed Complaint alleging the Social Security Administration ("SSA") has violated her rights by wrongfully suspending her social security disability payments after fourteen years.  She seeks to have her benefits reinstated immediately.

The United States government also enjoys sovereign immunity.  In any action in which the United States or one of its agencies is named as a defendant, a waiver of the government's sovereign immunity is a prerequisite to subject matter jurisdiction.  *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999).  "Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed."  *United States v. Bormes*, 568 U.S. 6, 9-10 (2012) (internal quotation marks omitted).  The Social Security Administration is an agency of the United States.

The Social Security Act provides for limited judicial review of final decisions of the Commissioner of Social Security: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision" in a "district court of the United States."  42 U.S.C. § 405(g).  The SSA has promulgated regulations outlining the process by which an applicant must exhaust administrative remedies prior to appealing a "final decision" in federal court.  After the SSA makes a determination regarding benefits, an applicant who wishes to contest that decision must first seek reconsideration, then request a hearing before an Administrative Law Judge ("ALJ"), and then, if still unsatisfied, request a review of the ALJ's decision by the Appeals Council.[2]  20 C.F.R.

---

[2] The SSA is required to provide notice of how a claimant may pursue administrative claims.  *See* 20 C.F.R. § 404.911(a)(2), (b)(6).

§ 416.1400(a); *Louis v. Comm'r of Soc. Sec.,* No. 09 Civ. 4725, 2010 WL 743939, at *2 (S.D.N.Y. Mar. 2, 2010).  Only after a plaintiff has completed these steps and obtained a decision from the Appeals Council will the decision become "final" and potentially eligible for federal district court review.  20 C.F.R. §§ 416.1400(a), 416.1481; *see also Escalera v. Comm'r of Soc. Sec.,* 457 F. App'x 4, 6 (2d Cir. 2011) ("Pursuant to 42 U.S.C. § 405(g), an individual must obtain a 'final decision of the Commissioner of Social Security' . . . before a district court can review a Social Security benefits determination.").

Here, there is no indication Plaintiff has pursued her claim administratively before the SSA.  In the absence of exhaustion of her administrative remedies, her claim is not a challenge to a final decision under § 405(g) and this court lacks jurisdiction to consider it.  *See Califano v. Sanders*, 430 U.S. 99, 108 (1977) (explaining § 405(g) "clearly limits judicial review to . . . a 'final decision by the [Commissioner] made after a hearing'").

In certain circumstances, however, a federal court may review a claim even though it has not been adjudicated by the agency on the merits in a hearing that proceeded a final decision. "[A] plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm."  *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir. 1997).  As Plaintiff seeks reinstatement of her benefits, her claim is not collateral to a demand for benefits. Plaintiff makes no assertion that proceeding before the agency would be futile or that requiring exhaustion would result in irreparable harm.  *See Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983) (explaining a plaintiff must show that requiring exhaustion would result in irreparable harm such that "no *post hoc* relief would be adequate.").

Because Plaintiff has not alleged her claim is a challenge to a final decision under § 405(g), or that her claim satisfied an exception to the exhaustion requirement, this court lacks jurisdiction to consider it.  Therefore, Plaintiff's proposed Complaint against SSA (Doc. 1-2) must be DISMISSED.

### D.   *Crosson v. Brattleboro Reformer and Susan Smallheer* **(Case No. 5:19-cv-200)**

Plaintiff has submitted a proposed Complaint alleging the Brattleboro Reformer and its reporter Susan Smallheer defamed her in an article published in the Brattleboro Reformer. Plaintiff alleges defendants have caused "many issues and hardships to include segregation in society, violation of civil rights and media bias, blocking all affiliates from reporting real facts." (Doc. 1-2 at 2.)  She seeks $3.8 million in damages for the violations of her rights and mental and emotional distress as well as punitive damages.  (*Id.*; Doc. 1-3 at 1.)

Under Vermont law, to make out a claim for defamation, which comprises libel and slander, a plaintiff must establish the following elements:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actional *per se*; and (6) some actual harm so as to warrant compensatory damages.

*Russin v. Wesson*, 2008 VT 22, ¶ 5, 183 Vt. 301, 303, 949 A.2d 1019, 1020 (citing *Lent v. Huntoon*, 470 A.2d 1162, 1167-68 (Vt. 1983)).  Plaintiff's proposed Complaint does not identify the specific false and defamatory language at issue.  "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" because "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017).

Because Plaintiff has not recited a specific statement made by either defendant or why the statement was allegedly false, she has failed to properly plead a defamation, slander, or libel

claim.  Therefore, Plaintiff's proposed Complaint against the Brattleboro Reformer and Smallheer (Doc. 1-2) must be DISMISSED.

### E.   *Crosson v. Vermont Judiciary and Staff* (Case No. 5:19-cv-201)

Plaintiff has submitted a proposed Complaint against the Vermont Judiciary and all its judges and staff alleging violations of her Constitutional rights from April 2019 through October 2019, based on alleged docketing, scheduling, and mailing errors.  She further alleges that on June 20, 2017, she was granted a request for release of records from the Essex County state court that has not been fulfilled.  She seeks $5 billion in damages or the maximum money damages available for "punitive damages, mental and emotional distress, anguish, defamation of character, slander, and libel."  (Doc. 1-3 at 2.)

Judges are absolutely immune from suits for money damages for acts performed in their official capacities.  *Mireles v. Waco*, 502 U.S. 9, 10 (1991); *see also Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions.").  A court "may, sua sponte, dismiss a complaint for lack of subject matter jurisdiction, based on a finding of judicial immunity." *Miller v. Cty. of Nassau*, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006).  It is "well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages."  *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999).  Judicial immunity "is not overcome by allegations of bad faith or malice" but is instead "overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11-12 (citations omitted).

Non-judicial court officers, including clerks and other court staff, also enjoy absolute judicial immunity for performance of tasks which are administrative in nature, so long as such tasks are an integral part of the judicial process and are undertaken pursuant to an established court policy or the explicit direction of a higher-ranking judicial officer. *See Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997).

Because Plaintiff's proposed action seeks to state a claim against the judiciary for a violation of her constitutional rights and she does not plausibly allege any actions performed in a personal capacity or outside the scope of jurisdiction, her claims are barred by the doctrine of judicial immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) (noting judicial acts are those involving the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights") (internal quotation marks omitted). Therefore, Plaintiff's proposed Complaint against the Vermont Judiciary and its staff (Doc. 1-3) must be DISMISSED.

### F.    *Crosson v. FACT TV8* (Case No. 5:19-cv-202)

Plaintiff has submitted a proposed Complaint against FACT TV8 for the alleged violation of her constitutional rights to freedom of speech and of the press. She alleges FACT TV8 has ignored her attempts to "book" with them and her requests to use equipment. (Doc. 1-2 at 2.) She states this ongoing behavior is "blocking her from freely expressing her speech and being prejudice and biased by media libel." (*Id.*) She seeks $3.8 million in damages as compensation for the violations of her rights, distress, and defamation.

The First Amendment, by its terms, applies only to laws enacted by Congress and not to the actions of private persons. The First Amendment provides, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or

abridging the freedom of speech." U.S. Const. amend I. Although Plaintiff purports to assert a cause of action directly under the First Amendment, 42 U.S.C. § 1983 occupies a "position of primacy" in providing a "basis for securing redress for constitutional violations." *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981); *see also VanBrocklen v. Gupta*, No. 09-CV-897, 2012 WL 7801682, at *2 (W.D.N.Y. Sept. 20, 2012) (noting § 1983 "provides the exclusive remedy for securing redress of constitutional violations"). Therefore, to state a claim for violation of her First Amendment rights, Plaintiff must state a claim under § 1983.

Although Section 1983 provides a statutory remedy and private cause of action for violations of the Constitution, to be actionable, the conduct at issue must have occurred "under color of" state law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful") (internal quotation marks omitted). Thus, "liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks omitted). Under § 1983, a claimant may bring suit against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, [any] person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Because Plaintiff has not alleged FACT TV8 is a state actor or is acting under color of state law, she has not stated a claim for violation of her constitutional rights under § 1983. Therefore, Plaintiff's proposed Complaint against FACT TV8 (Doc. 1-2) must be DISMISSED.

### G.    *Crosson v. Town of Barnet and Lisa Bowden* (Case No. 5:19-cv-203)

Plaintiff has submitted a proposed Complaint against the Town of Barnet and its tax collector Lisa Bowden.  She asserts she contacted defendants in early 2019 regarding purchasing an abandoned property within the town and has continued to contact them monthly regarding the property but defendants "delay response by days, weeks, leading to months."  (Doc. 1-2 at 2.) She asserts this is a "tactic to deter plaintiff from interest of purchase, with intent to cause more financial strain not only to plaintiff but limbo of facing homelessness."  (*Id.*)  Plaintiff seeks eight million dollars in damages from each defendant with an additional $1.5 million per month the case remains pending for the violation of her rights, anguish, distress and related hardships. She further requests the Town of Barnet "relinquish all vacant town claimed properties and structures to plaintiff immediately for restoration at no additional fee."  (*Id.*)

With regard to a claim against the Town of Barnet, under § 1983, "local governments are responsible only for their *own* illegal acts[;] . . . [t]hey are not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted) (municipalities can be held liable "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation").  A municipality may be liable under § 1983 only "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.*  Plaintiff therefore must plead "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*,

490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.

With regard to an individual defendant, to state a claim under § 1983, Plaintiff "must allege (1) that some person has deprived h[er] of a federal right, and (2) that the person who has deprived [Plaintiff] of that right acted under color of state . . . law."  *Velez*, 401 F.3d at 84 (internal quotation marks omitted).

Dismissal is warranted because Plaintiff does not allege the essential elements of a claim and thus "fail[s] to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff does not point to a particular federal constitutional or statutory right that she claims was violated and she also has not alleged that Defendant Bowden was acting under color of state law.  With regard to the Town of Barnet, Plaintiff has not alleged an official policy or custom.  Without such allegations, Plaintiff cannot state a claim under § 1983.  Because Plaintiff has not plausibly alleged a claim for relief, Plaintiff's proposed Complaint against the Town of Barnet and its tax collector Bowden (Doc. 1-2) must be DISMISSED.

### H.    *Crosson v. Governor of Vermont* **(Case No. 5:19-cv-224)**

Plaintiff has submitted a proposed Complaint against the Governor of Vermont purportedly on her own and her service dog Gypsy Roma's behalf.  She alleges she has been abused and neglected and the state government is "responsible for plaintiff's well being and safety as the government deemed plaintiff disabled."  (Doc. 1-3 at 2.)  She further asserts she "has been forced from stable living to living in a work trailer with no means of finance for food

or adequate shelter," her health and safety are at risk, and defendants are attempting to cause her emotional, physical, mental, and psychological harm. (*Id.*) She seeks the court order defendant(s): not to abuse her and her dog, not to interfere with her and her dog's personal liberty, not to stalk, cyber stalk, harass, abuse or neglect her and her dog, to provide temporary living expenses for her and her dog, not to contact her or her dog by any means, to stay at least 1000 feet from her and her dog, not to surveil her and her dog, to relinquish all weapons immediately, and to undergo psychological and mental health evaluation, drug screening and background check. Finally, she requests all state-claimed property be relinquished to her immediately and all "state funds be seized except for agencies providing adequate care, housing and support." (*Id.* at 3.)

Suits against state actors in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent" and "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . [T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.").

As discussed above, the Eleventh Amendment to the United States Constitution bars private suits for retrospective relief against a state in federal court, absent consent to suit by the state or valid congressional abrogation of this immunity. Neither the waiver[3] nor abrogation

---

[3] The court notes, to the extent Plaintiff seeks to allege a state fair housing claim, Vermont has consented to suit in state court under the Vermont Fair Housing and Public Accommodation Act, but not in federal court. *See* 9 V.S.A. § 4506(a) ("A person aggrieved by a

exception applies.  *See* 12 V.S.A. § 5601(g) (Vermont has not waived its immunity); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (holding in enacting § 1983, Congress did not abrogate state sovereign immunity under the Eleventh Amendment).  Accordingly, Plaintiff cannot assert claims against the state, its agencies, or any of its officials in their official capacities in federal court.

Therefore, Plaintiff's claims for damages and other relief against the Governor of Vermont are barred.  *See Papasan*, 478 U.S. at 276 (state immunity from suits in federal courts "exists whether the relief sought is legal or equitable"); *McGinty*, 251 F.3d at 90 (noting a court may raise sua sponte state sovereign immunity as a bar to federal subject matter jurisdiction). Plaintiff's proposed Complaint against the Governor of Vermont (Doc. 1-3) must be DISMISSED.

## I.   *Crosson v. Bellows Falls, Town of Rockingham, Wendy Harrison, and David Bemis* (Case No. 5:19-cv-225)

Plaintiff has submitted a proposed Complaint against Bellows Falls, Town of Rockingham, naming its town manager Wendy Harrison, and police officer David Bemis.  She alleges that, on a Friday in April 2019, Officer Bemis ordered her to leave the Hetty Green Motel even after she presented written permission from the heir to the property.  He informed Plaintiff she was trespassing on town-owned property and instructed her to take her truck and trailer to the exit 6 park and ride.  Approximately ten minutes after arriving at the park and ride, Town Manager Harrison presented a note to Plaintiff informing her she had twenty-four hours to leave the park and ride.  The following day, Plaintiff removed her trailer and truck although the trailer had a flat tire when she arrived.  Her request to see surveillance video from the area was denied.

---

violation of this chapter may . . . bring an action . . . in the Superior Court of the county in which the violation is alleged to have occurred.").

Plaintiff purports to bring a complaint for criminal and civil violations and requests "charges be filed against all defendants for . . . 1) aiding and abetting; 2) theft by deception; 3) harassment and stalking; 4) unauthorized taking of public interest; 5) violation of constitutional rights; 6) violation of civil rights; . . . [and] 7) abuse of power." (Doc. 1-3 at 2-3.) She seeks "all rights to and possession of all property of town interests, including tax sales, vacant properties, buildings, homes and businesses, lands of wood, soil, and water," all town accounts be seized and audited, and ten million dollars in damages as well as punitive damages and damages for "distress, slander, and more." (*Id.* at 3.)

As an initial matter, Plaintiff cannot file a complaint for federal or state criminal violations in federal court unless there is a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994).

With regard to a claim against Bellows Falls or the Town of Rockingham, the municipality cannot be held "vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60. The municipality may be liable under § 1983 only "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones*, 691 F.3d at 80. "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.* As noted above, Plaintiff therefore must plead "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray*, 490 F.3d at 195 (internal quotation marks omitted).

With regard to the individual defendants, to state a claim under § 1983, Plaintiff "must allege (1) that some person has deprived h[er] of a federal right, and (2) that the person who has

deprived [Plaintiff] of that right acted under color of state . . . law." *Velez*, 401 F.3d at 84 (internal quotation marks omitted).

Dismissal is warranted because Plaintiff does not allege the essential elements of a claim and thus "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff does not point to a particular federal constitutional or statutory right that she claims was violated and she also has not alleged that either Defendant Harrison or Bemis were acting under color of state law.  With regard to the municipal Defendant, Plaintiff has not alleged an official policy or custom.  Without such allegations, Plaintiff cannot state a claim under § 1983.  Because Plaintiff has not plausibly alleged a claim for relief, Plaintiff's proposed Complaint against Bellows Falls, Town of Rockingham, Town Manager Harrison, and Officer Bemis (Doc. 1-3) must be DISMISSED.

**J.**     ***Crosson v. State of Vermont* (Case No. 5:19-cv-226)**

Plaintiff has submitted a proposed Complaint against the State of Vermont alleging harassment, abuse, and stalking.  She "fears her life is in danger" because she is "subjected to homelessness and freezing temperatures."  (Doc. 1-3 at 2.)  She asserts Vermont agencies are "continuously sanctioning and suspending or denying" relief.  (*Id.*)  She requests court-appointed counsel.  She seeks "immediate relief and for SSA benefits to be fully reinstated until all court proceedings are final."  (*Id.*)

As with her cases against Vermont DCF, Vermont DHS, and the Vermont governor, *supra* II.A, II.B, and II.H, Plaintiff's claims for damages and other relief against the State of Vermont are barred by the Eleventh Amendment.  *See Woods*, 466 F.3d at 236 (recognizing the Eleventh Amendment bars suits in federal court against both state and state agencies).  Because Plaintiff cannot prevail in federal court as there is no subject matter jurisdiction, her request for

appointment of counsel is DENIED.  Plaintiff's proposed Complaint against the State of

Vermont (Doc. 1-3) must be DISMISSED.

## III.    Leave to Amend

The Second Circuit has held that district courts should not dismiss the claim of a self-

represented party without granting leave to amend at least once "when a liberal reading of the

complaint gives any indication that a valid claim might be stated."  *Dolan v. Connolly*,

794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted); *see also* Fed. R.

Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").   For

the cases that have been dismissed for lack of subject matter jurisdiction, amendment would be

futile.  However, Plaintiff may file an Amended Complaint in the following cases: *Crosson v.*

*Brattleboro Reformer*, 5:19-cv-200; *Crosson v. Vermont Judiciary & Staff*, 5:19-cv-201; *Crosson*

*v. FACT TV8*, 5:19-cv-202; *Crosson v. Town of Barnet*, 5:19-cv-203; and, *Crosson v. Bellows*

*Falls, Town of Rockingham*, 5:19-cv-225.

The Second Circuit has also long held that complaints asserting civil rights violations

"are insufficient unless they contain some specific allegations of fact indicating a deprivation of

rights, instead of a litany of general conclusions that shock but have no meaning."  *Barr v.*

*Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  Accordingly, in the event Plaintiff chooses to file an

amended complaint, she must clearly set forth the facts that give rise to her claim(s), including

the times and places of the alleged underlying acts, and each individual who committed each

alleged wrongful act.

Plaintiff is further advised that an amended complaint, if filed, will supersede and

completely replace the original Complaint.  *See Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 63

(2d Cir. 2018) (internal quotation marks omitted).  Accordingly, an amended complaint, if filed,

must be titled "Amended Complaint" and include all of Plaintiff's factual allegations in their entirety and must set forth all the claims she has against all defendants and all the relief she seeks; reference back to the original Complaints is insufficient. *See* Fed. R. Civ. P. 8(a); D. Vt. L.R. 15(b). Equally important, an amended complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. Plaintiff is also referred to Local Rule 10 which requires that pleadings be double-spaced. D. Vt. L.R. 10(a)(6).

For further reference, Plaintiff may consult the Court's Representing Yourself as a *Pro Se* Litigant Guide, available at http://www.vtd.uscourts.gov/sites/vtd/files/ProSeGuide113015.pdf.

## Conclusion

Plaintiff's requests to proceed *in forma pauperis* are GRANTED, however, for the reasons discussed above, Plaintiff's proposed Complaints are DISMISSED under 28 U.S.C. § 1915(e)(2)(B). Plaintiff may file Amended Complaints in the following cases: *Crosson v. Brattleboro Reformer*, 5:19-cv-200; *Crosson v. Vermont Judiciary & Staff*, 5:19-cv-201; *Crosson v. FACT TV8*, 5:19-cv-202; *Crosson v. Town of Barnet*, 5:19-cv-203; and, *Crosson v. Bellows Falls, Town of Rockingham*, 5:19-cv-225. Plaintiff is warned failure to file amended complaints on or before June 15, 2020, shall result in closure of the cases. The court hereby certifies that

under 28 U.S.C. § 1915(a)(3) any appeals of the dismissal of the proposed Complaints would not be taken in good faith.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 18th day of May, 2020.

/s/ Geoffrey W. Crawford
Chief Judge
United States District Court